J-A22028-18

2018 PA Super 273

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                      :            PENNSYLVANIA
                      :
            v.             :
                      :
                      :
RAFIE L. ALI                :
                      :
          Appellant     :   No. 2596 EDA 2017

Appeal from the Judgment of Sentence February 27, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005222-2012

BEFORE:   BENDER, P.J.E., NICHOLS, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:           **FILED OCTOBER 09, 2018**

Appellant, Rafie L. Ali ("Ali"), appeals from the February 27, 2017, judgment of sentence entered in the Court of Common Pleas of Montgomery County following our Supreme Court's remanding of the case to the trial court for a new sentencing hearing and the imposition of a new sentence. ***See Commonwealth v. Ali***, 637 Pa. 371, 149 A.3d 29 (2016).  After a careful review, we affirm.

Our Supreme Court has set forth the relevant facts and procedural history, in part, as follows:

> On May 21, 2012, Roger Malloy drove Robert Malloy, Kendall Harper and James Crawford to the Achi Store, a convenience store in Pottstown owned and operated by [Ali] and a partner, Muhammed Himed [("Himed")].  N.T. 6/11/13 at 132-33.  Harper and Crawford entered the store and purchased K2, a synthetic marijuana, from Himed.  Roger Malloy later picked up Rachel Witt. The entire group, except for Harper, then drank alcohol and smoked the K2 purchased at the Achi Store.  ***Id.***

_____

* Former Justice specially assigned to the Superior Court.

Later that evening, Roger Malloy, Witt and Crawford were involved in a serious automobile accident. As a result, Rachel Witt and James Crawford died while Malloy, the driver, survived. Police recovered K2 from the vehicle and a laboratory test detected the substance in Roger Malloy's blood system; Harper told police the K2 was purchased at the Achi Store. *Id.* at 131-33. As a result, Pottstown Police Officers Breslin and Yambrick were directed to attempt an undercover purchase of K2 from the Achi Store.

Upon entering the store, Officer Breslin asked [Ali] if he had "Kush," a brand of K2, [Ali] replied, "No, I don't," and Breslin exited. *Id.* at 20. Officer Yambrick entered the store an hour later, however, and purchased two containers of K2 from [Ali]. *Id.* at 35. Yambrick returned to the store to check for surveillance cameras and saw [Ali] sell K2 to an unknown individual. *Id.* at 46-48. Officers then obtained a search warrant and recovered 36 vials of K2, a .40 caliber handgun and various items used to smoke marijuana and crack cocaine. *Id.* at 85-103.

[Ali] and Himed were arrested and charged with, *inter alia*, corrupt organizations, criminal conspiracy, delivery of paraphernalia and possession with intent to deliver a controlled substance.[1]

---

[1] 18 Pa.C.S. § 911(b)(3)-(4); 18 Pa.C.S. § 903; 35 P.S. § 780-113(a)(33); and 35 P.S. § 780-113(a)(3), respectively.

---

Included in those charges was possession with intent to deliver K2 arising from the sale to Harper and Crawford. The cases against [Ali] and Himed were consolidated with the prosecution of Roger Malloy for homicide by vehicle while driving under the influence. However, the trial court, per the Honorable S. Gerald Corso, granted a defense motion to sever the cases from Malloy's prosecution. Himed and Malloy ultimately pleaded guilty before the Honorable Steven T. O'Neill. Thereafter, [Ali's] case proceeded to a jury trial before Judge O'Neill. Although the Commonwealth presented evidence of the purchases of K2 by Harper and Crawford, evidence regarding the fatal accident was not presented to the jury. The jury found [Ali] guilty of corrupt organizations, criminal conspiracy, delivery of paraphernalia and four counts of possession with intent to deliver synthetic cannabinoids, including Himed's sale to Harper and Crawford.

At [Ali's] sentencing, the Commonwealth sought to introduce victim impact evidence by incorporating the testimony of family members of Rachel Witt and James Crawford from Malloy's sentencing hearing. [Ali] objected on relevance grounds,

arguing Malloy's use of K2 sold by Himed could not be deemed the cause of the fatal accident. [Ali] argued Malloy had been drinking alcohol, organic marijuana was also present in his blood system, and there was no evidence of the effects the K2 may have had on him. [Ali] did not argue a statutory bar to the evidence. N.T. 11/26/13 at 23. Judge O'Neill allowed the Commonwealth to attempt to establish a causal relationship between the sale of the K2 to Harper and Crawford and the accident.

The Commonwealth then introduced evidence indicating the following: K2 from the Achi Store was recovered from the vehicle after the accident; Malloy stated he smoked K2 before the accident, which caused his heart to beat fast and his vision to blur, leading to the accident; and K2 is known to cause heart attacks and strokes. *Id.* at 33-40. The trial court also allowed the Commonwealth to incorporate the victim impact testimony from Malloy's sentencing hearing before Judge O'Neill. *Id.* at 44.

Although the court acknowledged "there [was] nothing" to allow a jury to affirmatively find [Ali] directly caused the deaths of Witt and Crawford, the court determined it could not ignore the connection between the sale of the K2 and the fatal accident. *Id.* at 72. The court explained this connection as follows:

> [The deaths are] connected to what you do, Mr. Ali, exactly what you do. If you peddle death and dangerous substances, you can expect something like this to happen. This is within the purview of being a business owner. If you take the risk, you should expect it. This is a stop and shop. This is not a sit-down store where people come in and dine. It is meant to buy something and go.
>
> And when people buy something and go in the nature of convenience stores in this society, they do so by vehicle. They drive up and they drive away. And if you sell them something that can lead to their death, that can lead to them being impaired, then this is a consequence that should be readily known to you.
>
> … I believe you simply were operating for profit, you took a risk, and your risk ended up contributing, leading, being connected to, whatever you want to say-the Court is not finding that you caused their death [*sic*] directly, but you certainly were connected to a series of horrific events that led to unspeakable tragedy for the families that this Court had to listen to

- 3 -

> during the sentencing phase of [Malloy's] case. So I cannot turn a blind eye to it. It is simply a fact. And that was the tragic turn of events that now leads to your conviction and your sentencing.
>
> *Id.* at 72-73. The court then applied and considered school zone and youth enhancements in calculating the sentencing guidelines, before ultimately sentencing [Ali] to an aggregate term of seven to fourteen years' imprisonment.[1] *Id.* at 66-67, 79-81.

*Ali*, 637 Pa. at 30-31, 149 A.3d at 373-76 (footnote in original) (footnote added).

Ali filed a notice of appeal to this Court, and he presented claims related to both trial and sentencing. Specifically, he averred: the trial court erred in applying the school zone enhancement for sentencing purposes; the trial court erred in applying the youth enhancement for sentencing purposes; the trial court erred by granting the Commonwealth's motion to introduce victim impact testimony from an unrelated criminal matter and considering such

---

[1] Specifically, the trial court sentenced Ali to the following: Count 1, corrupt organizations, fifteen months to thirty months in prison; Count 2, corrupt organizations, fifteen months to thirty months in prison; Count 3, possession with the intent to deliver a controlled substance, with a school zone enhancement, twelve months to twenty-four months in prison; Count 4, possession with the intent to deliver a controlled substance, with a school zone enhancement, twelve months to twenty-four months in prison; Count 5, possession with the intent to deliver a controlled substance, with a youth enhancement, twelve months to twenty-four months in prison; and Count 6, possession with the intent to deliver a controlled substance with a youth enhancement, eighteen months to thirty-six months in prison. All sentences were ordered to run consecutively and no further penalty was imposed for the remaining counts.

evidence for sentencing purposes; the trial court violated Ali's constitutional rights by applying sentencing enhancements in violation of **Alleyne**;[2] the trial court erred by preventing Ali from publishing exhibit D-6 (a laboratory report); and the trial court erred by precluding Ali from introducing evidence that the handgun found at the Achi Store was under the control of his co-defendant, Himed.

A three-judge panel of this Court denied relief on Ali's trial-related claims, but vacated his judgment of sentence and remanded for a new sentence. **Commonwealth v. Ali**, 112 A.3d 1210 (Pa.Super. 2015). Specifically, the panel determined the trial court erred in permitting certain victim impact testimony at sentencing, as well as erred in applying the school zone[3] and youth enhancements[4] in fashioning Ali's sentence.

In holding the trial court erred in permitting the victim impact testimony from family members related to the deaths of Witt and Crawford, the panel,

_____

[2] **Alleyne v. United States**, 570 U.S. 99, 133 S.Ct. 2151 (2013).

[3] Pursuant to 204 Pa.Code § 303.10(b)(2), the school zone enhancement compels a trial court to consider heightened guideline ranges when "the court determines that the offender manufactured, delivered or possessed with intent to deliver a controlled substance within 250 feet of the real property on which is located a public or private elementary or secondary school." **Id.**

[4] Pursuant to 204 Pa.Code § 303.10(b)(1), the youth enhancement requires the trial court to consider elevated guideline ranges when "the court determines that the offender distributed a controlled substance to a person or persons under the age of 18." **Id.**

relying upon the definition of "victim" in 42 Pa.C.S.A. § 9738, concluded that, since Ali was not convicted of a crime against a person, "there is no identifiable victim to render a victim impact statement admissible." *Ali*, 112 A.3d at 1223. Further, the panel opined that Witt and Crawford were "not Ali's victims under any reasonable reading of section 9738, particularly where all parties admit that Ali did not commit the specific act that led to the fatal wreck." *Id.* Accordingly, the panel mandated that, at resentencing, the trial court may not consider the victim impact testimony. *Id.* at 1224.

In holding the trial court erred in applying the school zone enhancement, the panel held the Commonwealth failed to prove the Y.W.C.A., which the trial court relied upon in applying the school zone enhancement,[5] constituted a "public or private elementary or secondary school" within the meaning of subsection 303.10(b)(2). *Id.* at 1226.

In holding the trial court erred in applying the youth enhancement, the panel noted that Ali did not actually sell K2 to Harper, who was under eighteen years old; but rather, Ali's co-defendant, Himed, delivered the K2 to Harper. *Id.* at 1231. The panel reasoned that, since Ali was convicted of possession with the intent to delivery/delivery of a controlled substance to Harper under an accomplice theory, and an "accomplice" is not an "offender" under

---

[5] Ali stipulated that the Y.W.C.A. was located within 250 feet of the Achi Store and operated a daycare. *Id.* at 1227.

subsection 303.10(b)(1), the youth enhancement was not applicable to Ali for sentencing purposes.[6] *Id.*

Ali filed a petition for allowance of appeal, which the Supreme Court granted limited to the issue of whether the trial court abused its discretion in considering the victim impact evidence during sentencing.[7] Upon review, the Supreme Court relevantly held that "[b]y its plain terms, Section 9738 does not purport to address the admissibility of victim impact evidence, but merely operates to protect certain crime victims from being sequestered at trial based on the possibility they may later offer victim impact evidence." *Ali*, 637 Pa. at 37, 49 A.3d at 385-86.

The Supreme Court noted that, in enacting 42 Pa.C.S.A. § 9721(b), our legislature "has recognized that criminal law exists to protect not only direct victims, but also the community that bears the indirect consequences of crime[.]" *Id.* at 37, 49 A.3d at 386 (quotation marks and quotation omitted). Ultimately, the Supreme Court held the victim impact statements were

---

[6] The panel rejected Ali's claim that application of the youth and school zone enhancements was unconstitutional pursuant to *Alleyne*.

[7] The Supreme Court specifically indicated:
> The [Superior Court's] holding regarding the school zone and youth enhancements is not before this Court; thus, remand for resentencing is required irrespective of our decision, though our decision will affect the parameters of resentencing.

*Ali*, 637 Pa. at 32, 49 A.3d at 378.

properly considered by the trial court as "community impact" evidence under Section 9721(b). Specifically, the Court held:

> The general community effects of illegal drug distribution are well-known, including effects (sometimes fatal) upon abusers, attendant property crimes by certain of those suffering from addiction, and violence associated with certain drugs or manners of distribution. The tragic fortuity here-the death of two at the hands of a driver impaired, to some extent, by an illegal narcotic-obviously is not present in all, or even in many, cases involving distribution of the involved drug.
>
> However, the risk or danger of such consequent fortuities is present and where, as here, the crime in fact is logically connected to a community impact suffered by specific individuals, Section 9721(b) makes that impact or effect a relevant consideration at sentencing-whether the evidence is called "victim impact" or not[.]

*Id.* at 38, 49 A.3d at 387.

Thus, the Supreme Court held the trial court did not abuse its discretion in considering the proffered evidence during sentencing, and consequently, the Court vacated this Court's order and remanded for resentencing consistent with the Supreme Court's opinion and this Court's independent grounds for remand implicating the school zone and youth enhancements under the sentencing guidelines. *Id.* at 39, 49 A.3d at 389.

On February 27, 2017, Ali, represented by counsel, proceeded to a new sentencing hearing at which the trial court acknowledged it reviewed the appellate court opinions, a lengthy pre-sentence memorandum from Ali's counsel, and a letter from the Pottsgrove School District regarding Ali's children, as well as letters from Vincent Benintende, Walty E. Rebello, Abdo

Ali, Remington A.M. Yhap, Mr. Williams,[8] Angel-Khalil Jones, and Hamyari Aidarosa. N.T., 2/27/17, at 5-7. The trial court indicated it was incorporating the transcript from Ali's original sentencing hearing on November 26, 2013, but that it was specifically not considering the school zone or youth enhancements.[9] *Id.* at 5-6.

The trial court further indicated it reviewed the sentencing guideline ranges and a sentencing memorandum from the Commonwealth. *Id.* at 7. The trial court noted that it would be taking into consideration any evidence presented concerning Ali's good conduct while he was in prison and on bail pending the resolution of his appeal. *Id.* The Commonwealth provided the trial court with a victim impact statement from Tracy Witt Eager, which had been provided to the Commonwealth shortly before the new sentencing hearing. *Id.* at 9.

Ali presented the testimony of Shane Reardon Bressi, who works for the supervision pre-sentence unit of the probation office. *Id.* at 14. Ms. Bressi testified she supervised Ali from August of 2015 to January of 2016. *Id.* During this time, Ali was on bail and monitored by an electronic ankle bracelet pending the outcome of his appellate case. *Id.* at 15. Ms. Bressi testified she

---

[8] The trial court noted that it could not discern Mr. Williams' first name from the letter. N.T., 2/27/17, at 7.

[9] At the original sentencing hearing, the trial court acknowledged it reviewed a pre-sentence investigation report. N.T., 11/26/13, at 73.

conducted a surprise visit at Ali's home and she discovered no evidence of any potential drug dealing or using. *Id.* at 18.

Ms. Bressi testified that, in her initial meetings with Ali, he was guarded and reserved; however, over time, he became more cordial. *Id.* at 18-19. During his supervision, Ali shared with her that his children and wife were living in refugee status in Yemen and they were in the process of fleeing to Southeast Asia. *Id.* at 22. However, after Ms. Bressi stopped supervising Ali, his children moved to the United States. *Id.* at 23. Ms. Bressi noted that Ali has four dependent children. *Id.*

Ms. Bressi testified that Ali submitted urine samples upon request, and each time, he tested negative for illegal drugs. *Id.* at 19-20. Further, she testified Ali did not violate the conditions of his electronic monitoring and he had a part-time job at a convenience store during his supervision. *Id.* at 23. She indicated that Ali "caused [her] no problems whatsoever." *Id.* at 24. She further testified she transferred supervision of Ali to her co-worker, Josh Mangle, in January of 2016, and prior thereto, she was starting to see an "obvious transformation for the better" in Ali. *Id.* at 25-26. In this regard, she testified Ali seemed to become more optimistic as time progressed and, in her opinion, it is "highly unlikely" that he would reoffend. *Id.* at 26.

On cross-examination, Ms. Bressi admitted there were flight concerns regarding Ali while he was on bail. *Id.* at 28. Further, she admitted that it

was not surprising that Ali tested negative for drugs since his offenses related to drug dealing as opposed to drug using. *Id.*

Ali also presented the testimony of Joshua Mangle, who worked for the house arrest electronic monitoring unit of the probation office. *Id.* at 33. Mr. Mangle testified he supervised Ali from January of 2016 to 2017. *Id.* at 34. He admitted that he never visited Ali's home; however, he testified Ali never failed a urine test, did not violate the electronic monitoring requirements, and always appeared for his appointments. *Id.* at 35.

Mr. Mangle testified that, after a bail hearing on February 13, 2017, Ali was permitted to remain on home electronic monitoring, with the requirement that he call Mr. Mangle every day at 9:00 a.m. and 4:00 p.m. *Id.* Ali fulfilled this requirement. *Id.* at 36-37. Mr. Mangle characterized Ali as "cooperative." *Id.* at 37.

Ali's counsel provided the trial court with documentation indicating that Ali's children have immigrated to the United States and have become citizens. *Id.* at 42. He also provided the trial court with copies of support checks, which Ali sent to one of the children's mother to whom he is not married. *Id.* at 43. Ali's counsel argued that Ali is the sole care provider for two of his children and one of his children attends school in New York. *Id.* at 44.

Ali exercised his right to allocution, and he made a lengthy statement to the trial court. Specifically, he expressed sympathy for and apologized to the families of Witt and Crawford. *Id.* at 45. He indicated his arrest was a

"wake-up call" for him and his actions made him pay a "huge price" with his family and friends. *Id.* at 46. He noted that he "lost everything of material value" and caused pain and shame to his family, friends, and community. *Id.*

He noted he failed his children, and he informed the trial court that on June 27, 2013, his young son fell off a third floor balcony of a house in Yemen, resulting in the child fracturing his skull. *Id.* at 47-48. He informed the trial court that many of his children have "mental problems as a result of the bombings" they endured in Yemen, and he is the only parent they have in their lives. *Id.* at 48-49. Since his wife is still waiting to immigrate to America, he informed the trial court that "if you put me in jail, [the children] will have no father and no mother." *Id.* at 49. Ali asked for mercy and a chance to help his children "achieve their American dream[.]" *Id.* at 50.

Ali's counsel informed the trial court that Ali was not asking for an "unreasonable sentence" upon resentencing; however, he asked the trial court to consider the positive changes Ali has made since the time he committed his crimes. *Id.* at 58. He argued Ali is a "different person" today, and the testimony from the probation department suggested Ali has been rehabilitated from the time he already spent in prison and on electronic monitoring for bail purposes. *Id.* at 59. Further, Ali's counsel averred Ali is remorseful, and his children should not have to "pay the price for his stupidity." *Id.* He suggested Ali is a man that will do whatever the court asks of him because he "has learned his lesson." *Id.* at 60.

Ali's counsel asked the trial court to focus on Ms. Bressi's testimony that she never saw any signs of drug dealing or using during the time she supervised Ali. *Id.* at 61. Ali's counsel asked the trial court to "sentence within the guidelines without the enhancements. And any additional time that he has to serve beyond the 27 months that he has [already served]. . .[the trial] court allow him to do it on house arrest." *Id.* at 61-62.

The prosecutor argued that, although Ali has children, "he clearly wasn't thinking about them when he's putting poison out on the streets. . .when he's running a business that he was convicted of a corrupt organization in, that business where he's peddling his wares to addicts, to drug users." *Id.* at 62. The prosecutor noted that Ali's offenses upon the community were a significant part of the case that could not be overlooked. *Id.*

The prosecutor noted it was not surprising that Ali did not test positive for drugs during his supervision by the probation department because he was a "dealer" and not "a user." *Id.* at 63. The prosecutor reminded the trial court that Ali provided synthetic drugs and paraphernalia, thus adding to Pottstown's problem with addicts. *Id.*

The prosecutor noted that Ali was part of a corrupt organization and a lengthy sentence was needed to deter him, as well as others, from committing the same type of offense. *Id.* at 64. The prosecutor argued the police are "trying to turn things around" in Pottstown and Ali contributed to the problem. *Id.*

The prosecutor indicated the Commonwealth appreciated Ali apologizing for his actions but noted that the type of illegal drug Ali sold was "very toxic in low doses[.]" *Id.* at 65. Therefore, "the significance of what he was selling is very, very severe, and we understand the consequences of it in this case in particular." *Id.* In this regard, the prosecutor noted that the families of Witt and Crawford are suffering. *Id.*

The prosecutor pointed the trial court to the impact statement recently provided by Tracy Witt Eager regarding the death of her fifteen-year-old daughter. In the statement, Ms. Witt Eager stated:

> As a direct result of this person's actions, my daughter [] who had just turned 15 years old two months prior will never get to grow up. She will never graduate high school.
>
> Instead, her father and I attended her class's graduation ceremony to honor an empty chair. Of this I would say that was probably the second hardest thing I have done in my life, second to watching our daughter being placed in the ground for eternity. We went for her. We did that for her because she could not.
>
> [Our daughter] will never grow up. She will never learn to drive, get her first job, graduate high school, fall in love, start a family of her own, make a life for herself to enjoy and be proud of. All of these things and more were taken as a direct result of what this man peddled to people for his own profit.

*Id.* at 66.

The prosecutor argued the trial court could not overlook Ali's greed and the decisions he made, which subjected others to poison for his profit. *Id.* at 67. The prosecutor further argued the trial court could not overlook the impact on the community as it related to a graduating class having lost a class member and the impact it had on the other graduates. *Id.* The prosecutor

- 14 -

noted that the selling of K2 in the store resulted in the death of Witt and Crawford and the effect of their deaths spread to many others, including their families and community. *Id.*

The prosecutor asked the trial court to fashion a sentence that would take into consideration the following: Ali facilitated Pottstown's drug problem by making it easier for addicts to get K2 and paraphernalia; Ali's actions contributed to the loss of life and impacted the lives of the surviving family members; and a sever sentence would deter Ali, as well as others, from selling drugs. *Id.* at 67-68. The prosecutor noted that, although it appears Ali "remained clean" during his house arrest, he had a "strong persuader to stay on the straight and narrow" in that he knew he would be resentenced. *Id.* at 68.

After counsel made their final remarks, the trial court indicated the following:

> The Court is ready to impose sentence, but before I do, this is a sentencing proceeding. And, again, the Court for that purpose is cognizant of the directives of the Supreme Court both in its ruling and also its direction upon remand in regards to the Superior Court.
>
> ***
>
> All right. The Court again has made a lengthy review of the sentencing record that was established at the original sentencing on November 26th of 2013 together with the sentencing record made here today. I have previously noted in my introduction to sentencing that I did incorporate [the original record] regarding the sentencing.
>
> Now, again, recognizing that I did not incorporate nor did I specifically incorporate any references or any evidence regarding a youth enhancement nor a school zone enhancement because I

- 15 -

was directed by the Superior Court not to. So the Court specifically makes that on the record that is not being considered.

Again, in terms of the Supreme Court, there was limited testimony that supplemented the record simply regarding a non-direct victim's testimony, and that falls within the community impact exception that it appears that the Supreme Court carved out as a result of this case. So that is what I heard.

Now, in addition, for the defense, I have specifically incorporated in the rehabilitative needs review that this Court makes in every sentencing as to the defendant's history on pre-sentence—pre-sentence bail GPS monitoring on the basis that was pending outcome of this appeal.

No evidence was presented of [Ali's] good conduct or any conduct while he was incarcerated for almost 39 months between a short stay in Montgomery County Correctional Facility, through stays at Montgomery County Correctional Facility and State Correctional Institution.

I would note that the only record made by the defense was as to complying with all of the terms and conditions of his bail and requirements set by Judge Page, not this Court. And I have taken them into account.

I have taken into account all other respects of the sentencing regarding both as to what weight I might give, because I'm required, the rehabilitative needs of [Ali].

The Court did hear a great deal of testimony of impact of this Court's sentence upon [Ali's] family and children. I did hear and would incorporate that testimony because that's what was presented to the Court. So I did incorporate that in addition.

I did incorporate the letters that were written on behalf of [Ali] and I previously set those forward in my opening remarks to sentencing. And now that I'm about to impose sentence, I would indicate that I have, in fact, considered those letters as well as the memorandum by counsel as well as the Commonwealth's memorandum and a statement of the guidelines available to this Court on resentencing.

And we had no objection on either side as to what those guidelines were. Again, they were guidelines that were previously incorporated by the Court at the original sentencing on November 26th except that there are no enhancements whatsoever applicable to these guideline[] sentences. I do intend to sentence [Ali] within the guidelines.

- 16 -

As to sentencing, this Court must consider and I will be issuing a sentence of total confinement. And it would be a confinement that is consistent with the protection of the public, that together with the gravity of the offense as it relates to the impact on the community.

I have also included in that and given due weight that the Court feels is appropriate to the rehabilitative needs of [Ali]. I have considered the [s]entencing [g]uidelines for purpose of resentencing. And again, the Court would restate some of the following.

Even though this is resentencing, these sentences because it was vacated, it has to start anew. But so does the date of the crime that occurred and its impact upon the community, but also the impact upon the authority of this Court to vindicate its sentences, meaning, again, that this sentence is starting anew, but by incorporation I still have to deal with all of the remarks that I made at sentencing, again to the exclusion of any school zone or any youth enhancements.

But the facts supporting. . .sentencing remains the same. And that's an important distinction because although [Ali's new counsel] was not here to defend against or ague against those facts, the jury made their determination in court. Not the Court. The jury determined that there were two counts of corrupt organization, that there were five counts of possession with intent to deliver, there were numerous counts of drug paraphernalia and there were numerous—there were two counts of criminal conspiracy.

I intend to sentence [Ali] on the two counts of corrupt organizations as [] the facts were found by the jury. I intend to sentence [Ali] on five counts of possession with intent to deliver. I intend to impose a sentence now on Count 7 where previously I made a determination of guilt without further penalty only up through Count 6.

And I'm doing that because, again, overall this Court has determined what I believe is an appropriate sentence to vindicate all of the requirements of this Court at any sentencing.

And, again, much of the defense in this case spent the time on the rehabilitative needs and/or the rehabilitative accomplishments of [Ali], what appeared to be the Court only from the time of August 27, 2015—am I correct?

- 17 -

I wanted to make sure I had that right. 2015, that's the date I stated on the opening record. I want to make sure I have it right. I said that was the date it appears that he was granted a bail bond.

\*\*\*

So, again, the Court will [] be considering [Ali's] rehabilitative evidence from August 27th of 2015 through today. And the only testimony that was presented was testimony of the Montgomery County Adult Probation Pre-sentence Unit who monitored [Ali]. This confirms he was released August 28th, 2015.

So, again, the Court has incorporated that, but as to the Court's remark, that being frozen in time, is that fateful evening [] which started the investigation that led to the arrest of [Ali] on all these charges is still a very strong basis for this Court's sentence in that [Ali] as he presents today as a good father, as a hard worker at the time before this investigation started, before the tragedy that occurred in this case.

[Ali] was a businessman who ran a business in the distress community of Pottstown in which he was selling drugs, selling paraphernalia to the community, period. And that's who he represented at that time.

And a great deal of the Court's sentencing based upon the extent, the history of that in terms of his employment, that the investigation for which this jury found beyond a reasonable doubt that he engaged in this type of activity forms a strong basis for this Court's sentencing.

I don't have to go in again and reiterate the impact that this had obviously on non-direct victims, but those non-direct victims clearly are members of the community. So they incorporate the testimony the Supreme Court found.

And to say that was some of the most moving, heart-wrenching, difficult testimony to hear would be a gross understatement and it has remained with this Court since that sentencing on November 26th.

And it is taken in the context. It is not the sentencing [*sic*] because of that, but it is the context of the crimes that this jury did convict [Ali] in this particular case.

I note that there was a co-defendant and, for purposes of sentencing to make sure that this record is complete, there was a co-defendant who pled guilty open to certain charges based upon

some form of a negotiation with the Commonwealth and this [co-defendant], Mr. Himed, was sentenced to a sentence that will be different than [Ali's] sentence in that [Ali] now stands convicted of charges that a jury determined and that each of those charges deserve to be vindicated by the authority of this Court. So there is a disparity in the sentencing between Mr. Himed, his co-conspirator and co-defendant, and [Ali].

Now, again, it is the nature and circumstances of this crime and its impact upon the community and its impact in this world, this contemporary world that we live in now which is just so overwhelmed with the tragedy of different crises revolving around drugs and/or alcohol to say that. It is [in this] context.

That's the community in which you were operating your store for profit and making a profit. And that profit was being made on the backs of those marginalized people that were deeply affected.

When the law said you're not allowed to sell K2, that K2 is nothing but an illegal drug in a different chemical form. And to rationalize that it was okay because it at one time had been legal and you just weren't sure whether it was or not, you found out in a very tragic way of why authorities made K2 that you were selling that night and to undercover officers illegal. Because it's dangerous. It's dangerous. And you pedaled it and you profited from it. So it is a serious crime. Make no mistake. It's a serious crime.

And, of course, your sentencing will have an impact upon your family, upon your community. But, again, this Court still freezes it in time as to the night that started this investigation. And again, I'm not—the family is present. They've heard my remarks previously. I'm not going to reiterate other than to pay homage to that sentencing date which I am permitted to incorporate.

And this is a new sentencing. But the purposes of that sentencing and the reasons for this Court's sentence in many respects remains the same. This is a sentence that is heavily weighted upon the impact to the community, heavily weighted to the protection of the public, and weighted as to the gravity of the offense and deterrents.

So I can weigh the rehabilitative needs of [Ali] together with the more difficult aspects of why a Court sentences, which is not

all about [Ali]. His rehabilitative needs are important. And this Court must make certain findings. And he does.

I'm not so sure again [Ali] made the conscious decision to break the law, engage in corrupt organization practices, engaged to sell illegal drugs in a marginalized community for profit, for profit.

So to say the rehabilitative needs, there's been no indication here that [Ali] has any substance use disorder, has any mental health disorder, has any of the mitigating circumstances in regards to his rehabilitative needs other than what is presented today is the impact of this Court's sentence upon his children.

Apparently[,] [Ali] made the noticeable gesture of bringing his children here, but they were not present in this country at the time of the original sentencing. They were present in this courtroom to be recognized that they are here to have the direct impact upon the Court.

And it did. It had the impact. It had the intended impact to say the Court's sentence which, again, in a lot of respects are frozen in time as to the day that all of this started. These children weren't in this country. They weren't here. And I have to consider it. But, again, the rehabilitative needs of [Ali] is what this Court has to weigh in the sentence.

I am sad that your sentence will have an impact upon your children. And that is difficult to watch as your children were here and you're not going to walk out that door. And for whatever reasons, you decided that [is] what you were going to do in sentence. And it's perfectly appropriate. I get to see the whole defendant.

But that wasn't the defendant that presented himself when he undertook this enterprise and when he was last sentenced on November 26th of 2013. It is the defendant today.

And yes, your sentence will have an impact upon your community and, most importantly, your family, but, again, that was a risk that you took. That was a risk that you undertook at a time that your children were not in this country.

And you have been living as a rule-abiding defendant awaiting sentencing. And I will take that into account, meaning your danger to the public in regards to crimes of violence. I will give weight to Ms. [Bressi's] testimony. But to the risk you present to the community as a businessman for the crimes, the very crimes you were convicted, I have no testimony they would

- 20 -

be anything that you would engage in business to allow you to make money.

And that's what this crime was about. You didn't know your people that you sold this to. You didn't know who they were. You were in a community selling again paraphernalia and dangerous drugs to those that would willingly buy your wares.

So, again, that's the gravity of the offense at this Court, and it's relating on its impact to the community, whether it's the impact to the families who have testified that the Supreme Court—and I would say appropriately—found should be a part of this sentencing because that's the real world. That is the real world of drug dealing. That's how it works.

You deal to someone face-to-face and entire communities are crushed. And families are parts of communities. And the loss that come[s] therefrom should be a risk factor that you undertake when you make business decisions as to you're going to peddle these dangerous products. And that's where the impact of the community is when we're dealing with those that would sell drugs in a marginalized community such as Pottstown.

So I have taken in both the nature and circumstances of the crime and your history, your character and your condition. But I have determined that total confinement is necessary because of the risk of a—your future crime. And, again, not violent crime, but I've shown nothing—because you have been incarcerated for this crime, there has not been the time other than since you have been under the very strict rules of a GPS.

So the nature of this I've taken that into account. And I believe, again, that there is a risk of future criminal behavior of the same type that you engaged in which this Court determines to be very high risk.

Again, the gravity of the offense, the protection of the public, and a lesser sentence would depreciate the seriousness of all of the crimes that jurors, members of this community, determined that you were guilty of and it would depreciate the authority of this Court to issue sentences that would form deterrents.

Let this ring loud and clear that those that would undertake the business of selling drugs under the guise of a convenience store, that they know that the law would stand there for the protection of the public. So deterrents is in there.

So, again, this is a weighted sentence. I have considered all of the needs of [Ali]. And that's what makes it tough when a judge is utilizing his or her discretion when issuing a sentence. So the basis of that sentence is that total confinement is warranted. Accordingly, I am sentencing him as follows.

*** 

As to 5222-12, Count 1, corrupt organizations, you're sentenced to undergo imprisonment for not less than 15 months nor more than 30 months in such State Correctional Institution that will be again designated by the Deputy Commissioner for Programs, Department of Corrections, and sent to the State Correctional Institution at Graterford for this purpose. It is RRRI minimum eligible. The RRRI minimum is 11 and one-quarter months.

The credit that this Court is granting is from July 1st of 2012 through July 13 of 2012, and then again from June 13th of 2013 through August 28th of 2015.

*** 

It's July 1st of 2012 and they were previously granted credits. They're granted 7-1 of 2012 through 7-13 of '12, 6-13 of '13 through August 28th of 2015.

Count 2, corrupt organizations, 15 to 30 months plus costs of prosecution. And that sentence is to run consecutively. Again, that is a RRRI minimum 11 and one-quarter months.

Count 3, possession with intent to deliver, a sentence of not less than nine nor more than 24 months in [a] State Correctional Institution. That is to run consecutively to the sentence on Count 2. And that is six and three-quarter month RRRI eligible.

As to Count 4, possession with intent to deliver, a sentence of not less than nine nor more than 24 months dating from—I mean, again, that is to run consecutive to the sentence that I imposed on Count 3. Again, that's a RRRI minimum of six and three-quarters months.

Count 5, possession with intent to deliver, not less than nine nor more than 24 months, again consecutive to Count 4 with a RRRI minimum of six and three-quarters months.

5222 of '12, Count 6, possession with intent to deliver, a sentence of not less than nine nor more than 24 months. That is to run consecutive to Count 5 with a RRRI minimum of six and three-quarters months.

And, finally, Count 7, possession with intent to deliver, a sentence of not less than six nor more than 24 months in such State Correctional Institution. And that is to run consecutive to the sentence I just imposed on Count 6. And that RRRI minimum would be four and one-half months.

It is the intention of this Court that it be an aggregate sentence of not less than six nor more than 15 years or 72 to 180 months. You'll receive credit on all sentences again from July 1st of 2012 through July 13th of 2012, and again from June 13th of 2013 through August 28th of 2015.

*Id.* at 69-88.[10]

Ali filed a timely, counseled post-sentence motion, which the trial court denied. This timely, counseled appeal followed. All Pa.R.A.P. 1925 requirements have been met.

Ali presents the following issues in his Statement of Questions Involved:

I.    Whether the new sentence is excessive and unreasonable and fails to abide by this Honorable Court's directive in the previous appellate decision insofar as the Honorable Trial Court failed to decrease the original sentence on remand proportionally with the lack of application of sentencing enhancements?

II.   Whether the Honorable Trial Court erred by increasing [Ali's] aggregate maximum sentence from 14 years to 15 years and sentencing [Ali] on a count for which he previously received no sentence, thereby creating a presumption of vindictiveness?

III.  Whether the Honorable Trial Court abused its' [*sic*] discretion by failing to order a [p]re-sentence [i]nvestigation report for the resentencing hearing pursuant to Pennsylvania Rule of Criminal Procedure 702?

_____

[10] The trial court provided Ali with notice of his post-sentence and appellate rights. *Id.* at 69-72.

IV. Whether the Honorable Trial Court erred by sentencing [Ali] to a term that was three times as long as his Co-Defendant, especially due to the fact that [Ali] was less culpable in the criminal scheme?

V. Whether [Ali's] sentence violates the 8th Amendment of the Constitution as it is cruel and unusual punishment and manifestly excessive, especially in light of the fact that [Ali] has led a law-abiding life with no prior record and the probation department testified he would be a good candidate for house arrest after serving almost 2 and a half years' incarceration?

Ali's Brief at 4-5.

In his first issue, Ali contends that, upon resentencing, the trial court failed to abide by the appellate courts' directives that, upon remand, the trial court must decrease Ali's original sentence by excluding the school zone and youth enhancements. In this vein, Ali relevantly avers the following:

[The appellate courts] mandate[d] that the enhancements not apply at resentencing[.]

Logically, then, the new sentences for [Ali] should have reflected a decrease consistent with the amount of the enhancement. For example, on Count 3, Possession with Intent to Deliver, [Ali] was originally sentenced to 12-24 months. At the original sentencing, the [trial] court considered and applied the school zone enhancement. Since the school zone enhancement is 12-24 months, then the new sentence should have reflected a decrease of 12-24 months. Accordingly, if the [trial] court abided by [the appellate courts'] directives. . .then the new sentence should have been RS-12 months on Count 3. That is not what the trial court did, however.

\*\*\*

In this case, since, at the original sentencing, [Ali] was sentenced pursuant to [an] increased amount of guideline enhancement, then the new sentence, if it were in keeping with the directives of [the appellate courts], should have reflected a decrease in the amount of the sentencing enhancement. The fact that the [trial] court sentenced within the sentencing guidelines

- 24 -

(at the very high end) means that the [trial] court did not abide by the terms of [the appellate courts].

Ali's Brief at 35, 38. We find no merit to Ali's claim.

Initially, we note that Ali's first issue presents a question of law, and therefore, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Yuhasz***, 592 Pa. 120, 923 A.2d 1111 (2007). In considering this issue, we bear in mind that an appellant has "no legitimate expectation of finality in his sentence after he has filed an appeal therefrom." ***Commonwealth v. Wilson***, 594 Pa. 106, 934 A.2d 1191, 1196 (2007). Moreover, it is well-settled that a vacated sentence is a legal nullity. ***See id.*** Further, where the appellate courts' dispositions upset the trial court's original sentencing scheme, remanding for a new sentencing proceeding is appropriate. ***See id.***

To reiterate, in the case *sub judice*, this Court vacated Ali's original sentence and remanded for a new sentence. Specifically, we directed the trial court to resentence Ali without consideration of certain victim impact evidence, as well as the school zone and youth enhancements. However, concluding the trial court was permitted to consider the victim impact evidence during sentencing, our Supreme Court vacated this Court's order and remanded for resentencing consistent with the Supreme Court's opinion, as well as this Court's independent grounds for remanding as it related to the school zone and youth enhancements.

Accordingly, and contrary to Ali's assertion, upon resentencing the trial court was permitted to start "afresh" and re-evaluate the sentencing factors (excluding the enhancements).[11] We specifically disagree with Ali's assertion that the trial court was required to reduce Ali's original sentence by subtracting the prison time originally imposed via the enhancements. This Court has previously rejected such a mechanical approach to resentencing proceedings. *See Commonwealth v. Jones*, 640 A.2d 914, 919-20 (Pa.Super. 1994) ("Reimposing a judgment of sentence should not be a mechanical exercise. Given the important nature of the interests involved, the judge at the second sentencing hearing should reassess the penalty to be imposed on the defendant[.]") (citations omitted)).

In his second issue, Ali contends the trial court's increasing of his aggregate maximum sentence, as well as imposing a prison term on Count 7, on resentencing created a presumption of vindictiveness. Specifically, he relevantly avers:

> [T]he trial court abused its discretion and violated [Ali's] constitutional rights by increasing [Ali's] sentence on remand. [Ali] was initially sentenced to an aggregate term of 7 to 14 years and received no penalty on Count 7. At the resentencing, the [] trial court increased the aggregate maximum sentence from 14 to 15 years. [Ali's] new aggregate sentence is 6 to 15 years.

---

[11] To the extent Ali contends the trial court applied the school zone and youth enhancements in resentencing Ali, we find no merit to this claim. The trial court specifically stated at resentencing that it was not applying the enhancements and the trial court confirmed as much in its opinion. *See* Trial Court Opinion, filed 1/19/18, at 15-16.

Further, [Ali] was sentenced to 6-24 months on Count 7, the charge for which he previously received no [further penalty].

Ali's Brief at 39-40 (citations to record omitted).

Ali's claim presents a challenge to the discretionary aspects of his sentence. *Commonwealth v. Robinson*, 931 A.2d 15, 22 (Pa.Super. 2007) (*en banc*) ("[A] claim of vindictiveness is a. . .challenge to the discretionary aspects of the sentence."). Pursuant to statute, Ali does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, he must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained, in order to reach the merits of a discretionary aspects claim,

we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether [the appellant] preserved his [or her] issue; (3) whether [the appellant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa.Super. 2013) (citations omitted).

Here, Ali filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included a separate Pa.R.A.P. 2119(f) statement in his appellate brief. Thus, we shall proceed to determine whether Ali's claim as presented raises a substantial question. *See Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268 (1996).

- 27 -

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted). In his appellate argument, Ali argues the trial court imposed a vindictive sentence in violation of his due process rights and without stating adequate reasons on the record. This raises a substantial question for our review. ***Robinson***, 931 A.2d at 26. Accordingly, we proceed to analyze the merits of Ali's discretionary aspects challenge.

Our standard of review of a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa.Super. 2015) (quotation omitted).

This Court has recently held:

When a due process violation is raised regarding resentencing, this [C]ourt must satisfy itself that an increase in a sentence is not the result of judicial vindictiveness. **See Commonwealth v. Walker**, [] 568 A.2d 201 ([Pa.Super.] 1989), *disapproved of on other grounds by* **Commonwealth v. Robinson**, 931 A.2d 15, 20–22 (Pa.Super. 2007) (*en banc*).[11]

_____

[11]**Walker** and prior cases held that a claim of judicial vindictiveness in resentencing was a "non-waivable challenge to the legality of sentence." **Robinson**, 931 A.2d at 22. In **Robinson**, however, an *en banc* panel of this Court overruled **Walker** and other cases on this issue by holding that claims of judicial vindictiveness, and any due process concerns arising therefrom, implicate only discretionary aspects of sentence. **Robinson**, 931 A.2d at 22.

_____

In **North Carolina v. Pearce**, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by* **Alabama v. Smith**, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the United States Supreme Court remarked:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 725–26, 89 S.Ct. 2072 (footnote omitted). Although *Pearce* dealt with an increased sentence following the grant of a new trial, we have held that *Pearce*'s rationale for providing reasons on the record applies also when the original sentence is vacated and a second sentence is imposed without an additional trial. *See Commonwealth v. Greer*, [] 554 A.2d 980, 987 n.7 ([Pa.Super.] 1983) (noting that *Pearce* applies to harsher sentence imposed by trial court after trial court granted post-trial request for resentencing).

*Commonwealth v. Barnes*, 167 A.3d 110, 123-24 (Pa.Super. 2017) (*en banc*) (emphasis from text and footnote omitted).

Accordingly, the United States Supreme Court in *Pearce* established a presumption of vindictiveness when a more severe sentence is imposed upon resentencing. However, the *Pearce* Court held the presumption of vindictiveness may be rebutted where the trial court places on the record non-vindictive reasons for the increased sentence, such as "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Barnes*, 167 A.3d at 123 (quoting *Pearce*, 395 U.S. at 726).

Further, in *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976 (1986), which expanded the *Pearce* Court's approach to resentencing and due process, the High Court held the presumption could also be overcome by other forms of objective information or legitimate sentencing concerns that were not presented to or considered by the trial court at the original sentencing hearing. *McCullough*, 475 U.S. at 138.

Here, assuming, *arguendo*, there is a presumption of vindictiveness,[12] we conclude the trial court rebutted the presumption of vindictiveness. For instance, the trial court specifically disavowed any vindictive purpose in resentencing Ali and indicated that, after the appellate courts vacated the original sentence on appeal, the trial court imposed a sentence on Count 7, as well as standard range sentences for all counts, in an effort to "effectuate the intent of its original sentencing scheme." Trial Court Opinion, filed 1/19/18, at 14.

Moreover, the trial court noted that it considered and credited the testimony of "Ms. [Bressi], who supervised [Ali] during his period of release. Ms. [Bressi] testified that [Ali] never violated any of the conditions of his release and gave her no problems. She also testified that his attitude and demeanor changed for the better during the time she was supervising him." *Id.* at 8. However, the trial court also recognized the heinous nature of Ali's crime, the need to protect the public, and Ali's rehabilitative needs. N.T.,

---

[12] Where the same trial judge imposes a greater penalty upon resentencing than previously was imposed, a presumption of vindictiveness attaches. ***See Commonwealth v. Serrano***, 727 A.2d 1168, 1170 (Pa.Super. 1999). Here, Ali was tried by a jury, convicted, and originally sentenced to an aggregate term of incarceration of seven years to fourteen years in prison. Upon remand, the original sentencing judge then presided over Ali's resentencing hearing and imposed an aggregate of six years to fifteen years in prison. Thus, although Ali's aggregate minimum term of imprisonment was less severe, his aggregate maximum term of imprisonment was more harsh upon resentencing.

2/27/17, at 80-82. Further, the trial court considered the victim/community impact statement of Tracy Witt Eager, which was presented to the Commonwealth just prior to the new sentencing hearing.

Thus, in taking into account the fact Ali did not violate the terms of his release while his case was pending on appeal, the trial court imposed a new, reduced aggregate minimum sentence, thus resulting in the opportunity for Ali to be paroled sooner. However, in taking into account other legitimate factors, *see* 42 Pa.C.S.A. § 9721(b), the trial court imposed a new, increased aggregate maximum sentence to accomplish the goals of rehabilitation, protection of the public, and deterrence.

We conclude the reasons for Ali's increased aggregate maximum sentence (and the imposition of sentence on Count 7) following remand appear on the record. Those reasons are based upon legitimate sentencing concerns. Thus, we are satisfied the trial court rebutted any presumption of vindictiveness that may have attached to its sentence imposed upon remand, and therefore, we find no merit to Ali's second claim.

In his third issue, Ali contends the trial court abused its discretion in failing to order a new pre-sentence investigation report ("PSI report") upon remand for purposes of resentencing.[13] We conclude this issue challenges the discretionary aspects of sentencing and presents a substantial question

---

[13] Ali sufficiently preserved this issue in his post-sentence motion.

permitting our review. *See Commonwealth v. Kelly*, 33 A.3d 638 (Pa.Super. 2011). However, we conclude Ali is not entitled to relief on his claim.

Pennsylvania Rule of Criminal Procedure 702(A)(1) provides that a sentencing judge may, in his or her discretion, order a PSI report. *See* Pa.R.Crim.P. 702(A)(1). Further, if the sentencing court fails to order a PSI report, it shall place on the record its reasons for dispensing with the report.[14] *Id.* We have explained that "[t]he essential inquiry is. . .whether the sentencing court was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1032 (Pa.Super. 2016) (quotation marks and quotation omitted). Moreover, technical non-compliance with the requirements of Pa.R.Crim.P. 702(A)(2) may be harmless when the trial court elicits sufficient information during the colloquy to substitute for a PSI report, thereby allowing a fully informed decision. *Commonwealth v. Carrillo–Diaz*, 64 A.3d 722, 727 (Pa.Super. 2013).

_____

[14] Pa.R.Crim.P. 702 relevantly provides:
> (2) The sentencing judge shall place on the record the reasons for dispensing with the pre-sentence investigation report if the judge fails to order a pre-sentence report in any of the following instances:
> (a) when incarceration for one year or more is a possible disposition under the applicable sentencing statutes[.]

Pa.R.Crim.P. 702(A)(2)(a).

Here, the trial court explained: "At [Ali's] original sentencing hearing, the court had the benefit of a [PSI report]. The circumstances surrounding the offense were outlined in the original PSI [report] and did not change. The [trial] court explicitly incorporated the record from [Ali's] initial sentencing [during the resentencing hearing]." Trial Court Opinion, filed 1/19/18, at 8 (footnote added).

Further, upon resentencing, the trial court held a lengthy hearing at which the trial court was provided with sufficient information to inform it of any changed circumstances from the time the last PSI report was completed, thereby allowing a fully informed, individualized sentencing decision. **See Carrillo-Diaz**, **supra**. For instance, the trial court indicated that it incorporated the rehabilitative needs review that the trial court made as to Ali's history on pre-sentence bail electronic monitoring pending the outcome of his appeal; the testimony from the probation department that Ali complied with the requirements of his supervision during his period of release; the circumstances related to Ali's children's immigration to the United States and Ali's support of them since his original sentencing hearing; letters from character witnesses indicative of Ali's good standing during his release; the applicable sentencing guidelines without the enhancements; and Ali's job and securing of housing during his release. N.T., 2/27/17, at 69-88; Trial Court Opinion, filed 1/19/18, at 8.

While the trial court acknowledged it was not provided with evidence of Ali's behavior during his incarceration, the trial court specifically acknowledged that, by all accounts, "[Ali has] been living as a rule-abiding defendant awaiting [re]sentencing[,] [a]nd [the court] will take that into account[.]" N.T., 2/27/17, at 83. Moreover, Ali exercised his right to allocution and made a lengthy statement to the trial court in which he expressed remorse. *Id.* at 45. Also, Ali's counsel explained the "positive changes" Ali has made and suggested Ali is a "different person." *Id.* at 58-59.

Thus, based on the aforementioned, we conclude the record reflects the trial court's reasons for Ali's sentence, as well as the trial court's consideration of the circumstances of the offense, Ali's background, and Ali's character. The trial court properly considered the PSI report from Ali's original sentencing hearing and conducted a proper pre-sentence inquiry at the new sentencing hearing in the absence of a second PSI report. According, Ali is not entitled to relief on his claim.

In his fourth issue, Ali claims the trial court erred in sentencing Ali to a term of imprisonment that was harsher than his co-defendants' terms of imprisonment without setting forth sufficient reasons for the disparity.[15] We

---

[15] Ali has identified his co-defendants as Himed and Malloy. Himed entered a negotiated guilty plea and received an aggregate sentence of 2½ years to 7 years in prison. Malloy, the driver of the vehicle in which Witt and Crawford were passengers at the time of their deaths, entered a negotiated guilty plea and received an aggregate sentence of 6 years to 12 years in prison.

conclude this issue challenges the discretionary aspects of sentencing and presents a substantial question permitting our review.[16] *See Commonwealth v. Cleveland*, 703 A.2d 1046 (Pa.Super. 1997) (holding substantial question raised where the appellant averred an unexplained disparity between his sentence and that of his co-defendant). However, we conclude Ali is not entitled to relief on his claim.

Initially, we note that we have observed that a co-conspirator "who has successfully negotiated a plea deal and a defendant sentenced after a jury trial. . .are not similarly situated for sentencing purposes." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010). Hence, "a disparity in sentencing between a defendant sentenced after a trial and a co-[actor] sentenced pursuant to a negotiated plea deal does not demonstrate the trial court penalized the defendant for exercising his right to a jury trial." *Id.*

Furthermore, a defendant is not entitled to the same sentence as that imposed on another person involved in the same crime. *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa.Super. 2010). Rather, "when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences." *Id.* (quotation marks and quotation omitted).

_____

[16] Ali sufficiently preserved this issue in his post-sentence motion.

Here, as set forth in detail *supra*, at the resentencing hearing the trial court stated extensive reasons for Ali's sentence, including the need to protect the public, the gravity of the offense as it related to the impact on the community, and Ali's rehabilitative needs. **See** N.T., 2/27/17, at 69-88. Also, the trial court took into consideration the appropriate sentencing guidelines, as well as Ali's lack of a "prior criminal record, his age, personal characteristics, and his potential for rehabilitation." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa.Super. 2002). The record as a whole reflects the trial court's consideration of the facts of the case and Ali's character. **See id.** Therefore, his claim fails on this basis alone.

Moreover, and contrary to Ali's assertion, the trial court specifically addressed and set forth reasons for the disparity between Ali's, Himed's, and Malloy's sentences. For example, in addition to the fact Himed and Malloy entered negotiated guilty pleas, the trial court explained there was a disparity between Ali's and Himed's sentences because Ali was the head of the Achi store from which the K2 drug and paraphernalia was sold. Trial Court Opinion, filed 1/19/18, at 10. Moreover, as to the disparity between Ali's and Malloy's sentences, the trial court explained that Ali's store provided the K2 to Malloy, who then drove while under the influence. **Id.**

Based on the aforementioned, we conclude the trial court sufficiently explained the reasons for Ali's sentence, and in particular, the reasons

justifying the disparity between Ali's, Himed's, and Malloy's sentences. Accordingly, there is no merit to this claim.

In his final issue, Ali claims his aggregate sentence is manifestly excessive and amounts to a cruel and unusual punishment. He avers his aggregate sentence is manifestly excessive in light of the fact he had no prior record and was "a model probationer during the time for which he was released on bail pending appeal." Ali's Brief at 56. He further avers the harshness of his aggregate sentence is not proportional to the gravity of the offenses.

As presented, Ali's final issue challenges the discretionary aspects of his sentence.[17] *See Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa.Super. 2017) (recognizing that a claim that a sentence is manifestly excessive challenges discretionary aspects of sentencing). Assuming, *arguendo*, Ali has raised a substantial question, we find no merit to his claim.

Preliminarily, we note sentences must be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). In reviewing the record, this Court must consider the nature of the offense, along with the history and characteristics of Ali; the opportunity of the sentencing court to observe Ali; the findings upon

---

[17] Ali sufficiently preserved this issue in his post-sentence motion.

which the sentence was based; and the sentencing guidelines. *See* 42 Pa.C.S.A. § 9781(d). Further, we note that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the trial court. *Mastromarino*, *supra*.

Here, the trial court set forth ample reasons for its sentence and specifically acknowledged that it was taking into consideration the requirements of Section 9721(b), as well as the sentencing guidelines. N.T., 2/27/17, at 69-88. The trial court's imposition of consecutive sentences is not unduly harsh or unreasonable, particularly in light of Ali's complete disregard for the community's safety in selling K2 and drug paraphernalia out of his store.

Moreover, to the extent Ali claims his aggregate sentence amounts to cruel and unusual punishment, we find his assertion is just another reiteration of his manifestly excessive claim, as well as his claim that his sentence is inappropriately harsher than that of his co-defendants.

Nevertheless, we note that the Eighth Amendment, to which Ali refers, forbids the imposition of "cruel and unusual punishments." U.S. Const., amend. VIII. Our Supreme Court has explained that the Eighth Amendment does not require strict proportionality between crime and sentence; but rather, it forbids only extreme sentences which are grossly disproportionate to the crime. *Commonwealth v. Baker*, 621 Pa. 401, 78 A.3d 1044, 1047

(2013). Here, as discussed *supra*, Ali's crimes warranted the imposition of consecutive sentences and does not amount to cruel and unusual punishment.

For all of the foregoing reasons, we conclude Ali is not entitled to relief on his various sentencing claims, and therefore, we affirm.

Affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/18