J-A28021-25

2026 PA Super 68

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN RIVERA | : | |
| | : | |
| Appellant | : | No. 226 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 10, 2024
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000606-2018

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

OPINION BY McLAUGHLIN, J.: **FILED: APRIL 10, 2026**

Jonathan Rivera appeals from the judgment of sentence entered following his convictions for four counts of corruption of minors (course of conduct), three counts of indecent assault (person less than 13 years of age), two counts of indecent exposure, and one count each of attempted indecent assault (person less than 13 years of age) and endangering the welfare of a child ("EWOC").[1] We affirm.

After Rivera's first trial in 2019, a jury convicted Rivera of the above crimes. The convictions stemmed from multiple instances of sexual abuse against four minor girls, S.M., S.C., C.P., and G.R. Rivera was sentenced to an aggregate sentence of eight to 52 years' incarceration.

_____

[1] 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 3126(a)(7), 3127(a), 901, 3126(a)(7), and 4304(a)(1), respectively.

Rivera appealed and ultimately, the Pennsylvania Supreme Court found constitutional errors in the first trial and granted Rivera a new trial. ***See Commonwealth v. Rivera***, 296 A.3d 1141, 1142 (Pa. 2023).

The second trial commenced on April 1, 2024. The Commonwealth proceeded with the same charges at the second trial as the first, except for the corruption of minors count involving complainant S.C., which was downgraded from a third-degree felony to a first-degree misdemeanor. The Commonwealth's evidence at the second trial included the testimony of the four girls and video and audio recordings of their informal disclosures and forensic interviews. It also presented the testimony of a forensic interviewer, a paramedic, G.R.'s mother, G.R.'s father, S.M.'s mother, C.P.'s father, and Sergeant Christopher Higdon. Rivera testified on his own behalf and offered the testimony of his mother, his sister, his former girlfriend, and C.P.'s mother.

After the second trial, a jury convicted Rivera of all 11 charges. At the second sentencing hearing, the trial court, which had presided over both trials and the first sentencing hearing, imposed an aggregate sentence of 10 years and three months to 64 years of incarceration. The sentence was an increase of two years and three months over the minimum sentence imposed after the first trial, and an increase of 12 years to the original maximum sentence. Rivera was found to qualify as a Sexually Violent Predator (SVP) prior to the second sentencing hearing. This appeal followed.

Rivera raises the following issues:

1. Did the trial court engage in sentencing vindictiveness in violation of Mr. Rivera's due process rights when it imposed a longer sentence following Mr. Rivera's appeal and retrial?

2. Was Mr. Rivera's sentence for corruption of minors, regarding complainant S.M., as a third-degree felony in violation of the state and federal ex post facto prohibitions as the offense date predated the effective date of 18 Pa.S.C.[A.] § 6301(a)(1)(ii)?

Rivera's Br. at 4.

Rivera's first issue on appeal is that "[i]n sentencing [him] to a longer sentence after his retrial than what it had imposed following his first trial, the trial court engaged in sentencing vindictiveness in violation of [his] due process rights." *Id.* at 17. He points out that "there is a presumption of sentencing vindictiveness any time a judge imposes a longer sentence after a successful appeal and retrial than that it had imposed at the first sentencing proceeding" and "[t]hat presumption is only rebutted if the court states on the record objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding that supports a longer sentence." *Id.* Rivera argues that the court failed to identify any conduct by him that occurred after the original sentencing proceeding that could justify the increase in sentence. *Id.* He maintains that "[t]he information the trial court relied upon to justify the lengthier sentence was information on the record and known prior to the first sentencing proceeding." *Id.* He highlights that

the information presented at Mr. Rivera's second trial was the same as that presented at his first trial. The same

- 3 -

> witnesses were called. There was no new information presented about Mr. Rivera's offense [sic] conduct. At the second sentencing hearing, there was no new information presented about Mr. River[a]'s conduct post-dating the first sentencing proceeding. There was no change in his criminal history; he had committed no offenses between the first sentencing proceeding and the second sentencing proceeding; there was no evidence that he had a poor disciplinary record while incarcerated.

*Id.* at 22-23.

Rivera asserts that the court improperly imposed a longer sentence due to his decision to appeal his original conviction and proceed to a second trial. He stresses that he was merely exercising his due process rights. In Rivera's view, the court engaged in sentencing vindictiveness in violation of his due process rights when it imposed a longer sentence.

A challenge to a sentence as presumptively vindictive in violation of due process rights implicates the legality of a sentence. ***Commonwealth v. Prinkey***, 277 A.3d 554, 564, 567-68 (Pa. 2022).[2] Therefore, our standard of

_____

[2] Rivera treated this claim as a challenge to the discretionary aspects of the sentence. However, our Supreme Court in ***Prinkey*** clarified that such a claim is a challenge to the legality of the sentence. ***Prinkey***, 277 A.3d at 564, 567-68; ***see also Commonwealth v. McFarland***, No. 498 WDA 2022, 2023 WL 8370237, at *4 (Pa.Super. filed Dec. 4, 2023) (unpublished mem.) (citing ***Prinkey*** and noting that "in the past this Court has considered a claim asserting judicial vindictiveness in resentencing to be a challenge to the discretionary aspects of sentencing," but "more recent decisions" consider such a claim challenges the legality of the sentence); ***Commonwealth v. Lowman***, No. 279 EDA 2023, 2023 WL 6862058, at *2 & *2 n.5 (Pa.Super. filed Oct. 18, 2023) (unpublished mem.) (same); ***Commonwealth v. Neidig***, No. 1455 MDA 2021, 2023 WL 2770781, at *5 (Pa.Super. filed Apr. 4, 2023) (unpublished mem.) (same).

review "is *de novo* and our scope of review is plenary." ***Commonwealth v. Asbury***, 299 A.3d 996, 998 (Pa.Super. 2023).

Courts "may not punish an appellant for exercising appellate rights." ***Commonwealth v. Speight***, 854 A.2d 450, 455 (Pa. 2004). "When a due process violation is raised regarding resentencing, this [C]ourt must satisfy itself that an increase in a sentence is not the result of judicial vindictiveness." ***Commonwealth v. Barnes***, 167 A.3d 110, 123 (Pa.Super. 2017) (*en banc*), ***overruled on other grounds by Commonwealth v. Cruz***, 320 A.3d 1257 (Pa.Super. 2024) (*en banc*). A presumption of vindictiveness arises when the court imposes a more severe sentence upon a defendant after a new trial. ***Id.*** Additionally, "[w]here the same trial judge imposes a greater penalty upon resentencing than previously was imposed, a presumption of vindictiveness attaches." ***Commonwealth v. Ali***, 197 A.3d 742, 762 n.12 (Pa.Super. 2018).

As this Court explained in ***Barnes***:

In ***North Carolina v. Pearce***, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), ***overruled on other grounds by Alabama v. Smith***, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the United States Supreme Court remarked:

Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more

- 5 -

severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 725-26, 89 S.Ct. 2072 . . . . Thus, under *Pearce*, whenever a trial court imposes upon a defendant a more severe sentence following resentencing, the reasons for such sentence must be made a part of the record. Absent evidence that a sentencing increase is justified due to objective information concerning a defendant's case, the presumption of vindictiveness cannot be rebutted.

*Barnes*, 167 A.3d at 123-24 (cleaned up).

This Court has further recognized that

the *Pearce* Court held the presumption of vindictiveness may be rebutted where the trial court places on the record non-vindictive reasons for the increased sentence, such as "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Barnes*, 167 A.3d at 123 (quoting *Pearce*, 395 U.S. at 726, 89 S.Ct. 2072).

Further, in *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), which expanded the *Pearce* Court's approach to resentencing and due process, the High Court held the presumption could also be overcome by other forms of objective information or legitimate sentencing concerns that were not presented to or considered by the trial court at the original sentencing hearing. *McCullough*, 475 U.S. at 1[42], 106 S.Ct. 976.

*Ali*, 197 A.3d at 762.

More recently, in **Prinkey**, the Pennsylvania Supreme Court explained that the **Pearce** presumption of vindictiveness is still valid. However, our Supreme Court observed:

> Subsequent [United States] Supreme Court decisions narrowed the reach of **Pearce**'s presumption of vindictiveness. In **Alabama v. Smith**, the Supreme Court held that the **Pearce** presumption "does not apply in every case where a convicted defendant receives a higher sentence on retrial." 490 U.S. [794, 799, (1989)]. In the **Smith** Court's view, **Pearce** was not designed to prevent the imposition of an increased sentence following retrial "for some valid reason associated with the need for flexibility and discretion in the sentencing process." **Id.** Thus, the Court held that the **Pearce** presumption applies only in "circumstances . . . in which there is a 'reasonable likelihood' [. . .] that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." **Id.** (citing **United States v. Goodwin**, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). "Where there is no . . . reasonable likelihood [of vindictiveness], the burden remains upon the defendant to prove actual vindictiveness." **Id.**

**Prinkey**, 277 A.3d at 565. The **Prinkey** Court concluded:

> [T]he **Pearce** presumption will not apply when the resentencing that results in a higher sentence follows some post-appeal occurrence that makes it likely that the court obtained new details about the defendant's moral character and suitability for rehabilitation. Where no such event occurs, yet the defendant's new sentence is higher than the original sentence, the **Pearce** presumption applies with full vigor. And when it does, it acts as a "prophylactic" measure that forbid[s] . . . the imposition of a greater punishment than was imposed after the first trial, absent specified findings.

**Id.** (cleaned up).

Here, Rivera was first tried by a jury, convicted, and sentenced to an aggregate sentence of eight to 52 years' incarceration. He filed a direct appeal and our Supreme Court reversed and granted Rivera a new trial. After the new trial, the original sentencing judge presided over Rivera's resentencing hearing and imposed a harsher sentence. We thus conclude that a presumption of vindictiveness attached in this matter.

We next consider whether the trial court rebutted the presumption of vindictiveness. *Pearce* and its progeny hold that the presumption of vindictiveness is controlling unless the new sentence was based upon "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding," *Barnes*, 167 A.3d at 123 (quoting *Pearce*); "objective information or legitimate sentencing concerns that were not presented to or considered by the trial court at the original sentencing hearing," *Ali*, 197 A.3d at 762 (citing *McCullough*); or "new details about the defendant's moral character and suitability for rehabilitation." *Prinkey*, 277 A.3d at 565. There also must be a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing judge. *Id.* Therefore, contrary to Rivera's contention, a court's justification for imposing a lengthier new sentence is not limited to only "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Rivera's Br. at 23 (quoting *Barnes*, 167 A.3d at 123; *Pearce*, 395 U.S. at 726).

Here, the court explained that, at the second sentencing hearing, there was additional objective information available to the court:

> This information includes (i) [Rivera's] recent designation as an SVP and the expert opinion related thereto, (ii) the greater, known, and more specific impact on the victims and their families which is no longer speculative, and (iii) [Rivera's] unconvincing, unbelievable and fabricated testimony at trial, recognizing it was again given in an attempt to assert [his] innocence, but which nonetheless demonstrates his continuing denial and lack of remorse in the face of credible, consistent, and corroborating evidence of his guilt.

> The [c]ourt's imposition of a lengthier sentence had nothing to do with [Rivera's] exercise of his appeal rights, which resulted in a new trial, except to the extent that, as a result of those appeals, an additional five years has passed. Rather, the imposition of the sentence had everything to do with the appropriate sentencing factors, viewed afresh in light of the new and more detailed information. The sentence was appropriate and based on information gleaned from (i) the second trial at which all of the girls, now five (5) years older, testified, (ii) the SVP hearing, at which an expert in the determination of sexually violent predators testified, and (iii) the second sentencing hearing, at which the victims and their families shared their devastation. Given this new information, and for the reasons stated on the record at the sentencing hearing and in the sentencing order, the imposition of an aggregate sentence of ten (10) years and three (3) months to sixty-four (64) years is appropriate and justified, notwithstanding the fact it exceeds the eight (8) year to fifty-two (52) year sentence imposed by this [c]ourt in 2019.

Trial Court Opinion Re: Post-Sentence Motion and Motion for Reconsideration of Sentence, filed 1/17/25, at 42-43.

Upon review, we find no evidence in the record to support Rivera's claim that the court was vindictive in sentencing him after his second trial. The trial

court expressly disavowed any vindictive purpose in resentencing Rivera both in its opinion and at the sentencing hearing. *See id.* at 42; N.T. Sentencing, 9/10/24, at 19. Instead, the court considered the sentencing factors "afresh" and additionally considered Rivera's recent designation as an SVP "based on the determination that he engaged in predatory conduct due to a mental abnormality, and is likely to continue to engage in such conduct," the new testimony of the victims and the significant impact of the crimes on them, and Rivera's lack of remorse. *See* N.T. Sentencing at 21, 24-25; *Ali*, 197 A.3d at 759 (stating that "upon resentencing the trial court was permitted to start 'afresh' and re-evaluate the sentencing factors"). The record thus supports the conclusion that the presumption of vindictiveness was rebutted. No relief is due.

Rivera's second issue concerns his corruption of minors felony conviction regarding complainant, S.M. He argues the subsection of 18 Pa.C.S.A. § 6301 for which he was convicted became effective on December 6, 2010. He notes that before December 6, 2010, that subsection did not exist and the maximum gradation for a violation of Section 6301 was a first-degree misdemeanor. Rivera maintains that the evidence presented at trial showed that any offense involving S.M. occurred prior to December 2010. He therefore maintains that in sentencing him for a violation of Section 6301 as a third-degree felony, the trial court violated the state and federal *ex post facto* prohibitions.

Before addressing the merits of Rivera's claim, we first must determine whether the issue is preserved for our review. "Issues not raised in the lower

court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). A review of the record indicates that Rivera raised this issue for the first time in his Pa.R.A.P. 1925(b) statement. Claims raised for the first time in a Rule 1925(b) statement are waived. *Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa.Super. 2011). However, one exception is a challenge implicating the legality of an appellant's sentence. *Commonwealth v. Seals*, ___ A.3d ___, 2026 PA Super 29, 2025 WL 4234323, *7 (Pa.Super. filed Feb. 17, 2026) (*en banc*). "A challenge to the legality of a sentence can be appealed as of right and cannot be waived[.]" *Id.*

In *Prinkey*, our Supreme Court outlined four broad types of legality challenges:

> (1) a claim that a sentence was imposed pursuant to a facially unconstitutional sentencing statute; (2) an assertion that statutory preconditions to the court's sentencing authority were not present; (3) a challenge alleging a violation or nonfulfillment of a substantive, constitutional restriction upon the court's authority to impose the sentence; and (4) an argument that the statutory support for the conviction is void *ab initio*.

*Prinkey*, 277 A.3d at 556.

A challenge to an *ex post facto* violation falls within the third category of legality challenges, as it alleges a violation of a substantive, constitutional restriction upon the court's authority to impose the sentence. Since such a claim implicates the legality of a sentence, it cannot be waived. Accordingly, we proceed to the merits of Rivera's claim.

"[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Atanasio**, 997 A.2d 1181, 1183 (Pa.Super. 2010) (citation omitted) (alteration in original).

"Article I, Section 17 of the Pennsylvania Constitution prohibits the enactment of any *ex post facto* law." **Commonwealth v. Carey**, 249 A.3d 1217, 1228 (Pa.Super. 2021). "A criminal law is deemed *ex post facto* if two critical elements are met: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." **Id.** (citation and internal quotation marks omitted). "[C]entral to the *ex post facto* prohibition is a concern for the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." **Commonwealth v. McGarry**, 172 A.3d 60, 68 (Pa.Super. 2017) (citation omitted, emphasis removed, alteration in original).

Here, S.M. testified at trial that she was born in March 2003 and lived in Scranton, Pennsylvania from ages five to nine. N.T. Trial, 4/2/24 AM Session, at 132. She stated that Rivera abused her during that time. **Id.** at 132-33, 140. S.M. recalled that the abuse began shortly after her younger sister was born in 2009. **Id.** at 140. She stated that the abuse ended when she moved from Pennsylvania to Georgia at the age of nine. **Id.** at 139. S.M. testified that the incidents occurred "after school, so during the afternoon" in

the living room at her residence, except for one incident that occurred at night in her bedroom. *Id.* at 134-35, 143-44.

In S.M.'s forensic interview, which was taken when she was 12 years old and played for the jury at the trial, she stated that the abuse began when she was six years old. *Id.* at 155. She said that the abuse occurred during the summer between kindergarten and first grade. *Id.* at 155-56, 163-64. S.M. stated that the abuse "didn't go beyond the summer." *Id.* at 163.

Rivera testified that any alleged abuse of S.M. could not have happened in 2009 because he was living in Illinois:

> [Defense Counsel] Could th[e alleged abuse] have ever happened in 2009?
>
> [Rivera] Absolutely not.
>
> Q And why is that?
>
> A I didn't live in the state of Pennsylvania, at the time. I lived in the state of Illinois. Ah, Cicero, and um I ended up actually, at that time, I actually only had a permit, I didn't [sic] a driver's license. And that's where I got my driver's license in the state of Illinois is where I actually got my first license.
>
> Q And, how long did you work in Illinois?
>
> A I wasn't working very much.
>
> Q How long did you stay in Illinois?
>
> A For about a year.
>
> Q A year?
>
> A Yes, about a year.
>
> Q So now we're up to 2010?
>
> A Correct.

N.T. 4/3/24 AM Session, at 133-34.

A review of the record indicates that there were multiple incidents of abuse by Rivera that occurred over a period of time at S.M.'s residence in Pennsylvania. S.M. testified that the abuse stopped when she moved to Georgia at the age of nine. Since S.M was born in March 2003, she turned nine in March 2012. Thus, there is support in the record that at least some of the incidents occurred after the December 6, 2010 effective date of 18 Pa.C.S.A. § 6301. *See Commonwealth v. Wood*, 208 A.3d 131, 137 (Pa.Super. 2019) (*en banc*) (stating the effective date of a statute is the relevant date for *ex post facto* determinations). Rivera himself testified that he did not move to Pennsylvania until 2010. To the extent that S.M.'s testimony at trial was inconsistent with her statements at the forensic interview as to when the events occurred, the jury, as factfinder, was free to believe all, none or part of the evidence and to determine the credibility of the witnesses. *See Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa.Super. 2015). Accordingly, the court did not violate Rivera's rights under the *ex post facto* clause when it sentenced him under Section 6301.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/10/2026